Sholiton Industries, Inc. ("Sholiton") appeals from a judgment of the Montgomery County Court of Common Pleas, which declared that its lease of laundry facilities was invalid and unenforceable and which ejected it from the Highland Park Apartments.
The background of the case is as follows.
When this action commenced in 1994, a complex known as the Highland Park Apartments was owned by James Sowers, Kennon W. Davis, and Stephen G. England as tenants in common. The property had been purchased in 1984. From the beginning, Sowers and Davis had taken a "hands-off" approach to the management of the complex, and England had handled its management. Shortly after the purchase of the Highland Park Apartments, England hired Shilling Properties, a real estate management corporation, to manage the complex. England signed a written management agreement with Shilling Properties, but Sowers and Davis did not sign the agreement.
Shilling Properties managed the Highland Parks Apartments from April 1984 until September 1986. During that time, Shilling Properties, through its on-site manager, performed such functions as advertising for rentals, showing units, executing leases for the apartments and laundry rooms, collecting rent derived from the apartments and laundry rooms, and contracting and paying for repairs, lawn service, and pool service. Despite not having signed the management agreement, Sowers and Davis never complained during this time period that Shilling Properties did not have authority to manage Highland Park Apartments. Further, neither Sowers, Davis, nor England personally entered into leases for the apartments or laundry rooms or restricted Shilling Properties' authority to execute leases.
After Shilling Properties had assumed management of the Highland Park Apartments, England instructed Shilling Properties to find a new supplier of coin-operated laundry equipment for the laundry rooms and to make improvements to the laundry rooms. Pursuant to the discussions with England, Shilling Properties leased the laundry rooms to Sholiton, a vendor of coin-operated laundry services, for a period of ten years with a five-year unilateral renewal option by Sholiton. The lease was signed on behalf of Shilling Properties by Lynn Buckley, the on-site manager of the Highland Park Apartments. England reviewed and approved the lease with Sholiton. Sowers and Davis did not review the terms of the lease, and they were not notified that the lease had been executed.
Sholiton operated the laundry rooms from 1986 to 1992 without protest from any of the owners. In 1992, however, Sowers and Davis decided that they were not getting enough income from the laundry rooms. At this point, Sowers and Davis learned that Sholiton was operating the laundry rooms and asked Sholiton to vacate the premises. In response, Sholiton presented the lease to Sowers and Davis, who then disavowed the lease for the first time and demanded possession of the laundry rooms. Sholiton refused to cease operation of the laundry rooms and continued to operate the rooms under the terms of the lease for many months. During this time, Sowers and Davis attempted unsuccessfully to negotiate a new lease with Sholiton. In fact, Sholiton indicated its intention to exercise its option to renew the existing lease for another five years.
On March 4, 1994, Sowers and Davis filed a complaint for a declaratory judgment and for an order ejecting Sholiton from the Highland Park Apartments. Sowers and Davis contended that the purported lease had not been authorized by the owners and had not been executed in compliance with the requirements set forth in the R.C. 1335.04, R.C. 1337.01, and R.C. 1337.04, the statute of frauds and the statutes governing powers of attorneys. Sholiton sought to enforce the lease. Sholiton attempted to join England in this action, but the trial court overruled the request on the grounds that England was not a partner of Sowers or Davis, had not sought to participate in the action, and was apparently involved in bankruptcy proceedings.
The case was referred to a magistrate for a hearing. Following the hearing, the magistrate declared the lease invalid and unenforceable and ejected Sholiton from the Highland Park Apartments. The trial court adopted the decision of the magistrate and entered judgment in favor of Sowers and Davis.
Sholiton asserts three assignments of error on appeal.
 I. THE TRIAL COURT ERRED IN FINDING THAT A LACK OF AUTHORITY EXISTED IN PLAINTIFF'S PROPERTY MANAGEMENT AGENT WITH RESPECT TO EXECUTION AND ENFORCEMENT OF THE LEASE AGREEMENT AND THAT THE LEASE AGREEMENT IS THEREFORE INVALID AND NOT ENFORCEABLE.
Sholiton contends that the trial court's findings cannot be logically reconciled and that the trial court should have found the lease valid and enforceable. A brief discussion of the law and of the magistrate's and trial court's decisions will be helpful in considering this argument.
The statute of frauds expressly requires that the authority of an agent to execute a lease be in writing. R.C. 1335.04. In addition, a power of attorney for the lease of real property must be signed, attested, acknowledged, and recorded. R.C. 1337.01; R.C. 1337.04. Thus, a power of attorney to enter into a lease must be executed with the same formalities required for the execution of the lease itself. Lithograph Building Co. v. Watt
(1917), 96 Ohio St. 74, 81. It was undisputed that Shilling Properties' lease of the laundry rooms at the Highland Park Apartments to Sholiton was defectively executed in that Shilling Properties' written agreement with England to manage the property did not specifically authorize it to execute leases and that it had no other written authority to do so. A defectively executed lease, however, may be enforced in equity as a contract to make a lease under certain circumstances. Id. For example, a defectively executed lease, when made by the owner of real property, may be enforced against him in equity as a contract to make a lease for the reason that it is his contract. Id. at 84.
The Supreme Court of Ohio addressed the extent to which an agent can bind an owner through a defectively executed lease inLithograph, supra. The court held that, if a defectively executed lease is made by one wrongfully assuming to be the agent of the owner, or by one who is such agent but lacks actual authority to make such a lease, the defect is fatal and the lease is invalid and unenforceable against the owner. Id. at 84-85. In such a situation, the lease cannot in equity be decreed an enforceable contract to make a lease. If, however, the power actually conferred upon the agent was sufficient to authorize him to execute the lease, "then, notwithstanding its defective execution, the lease negotiated in pursuance of authority actually conferred would be treated in equity as a contract to make a lease." Id. at 82. In other words, a lease is valid and enforceable against the owner despite its defective execution if it was entered into by an agent with the owner's actual authority, just as a lease entered into by the owner is enforceable against him notwithstanding its defective execution.
The magistrate made the following findings regarding the extent of authority conferred upon Shilling Properties by the owners of the Highland Park Apartments. The magistrate concluded that the owners had "held Shilling Properties out as being able to perform all the functions of management without restriction," had approved the apartment leases executed by Shilling Properties, had fulfilled other contracts executed by Shilling Properties, and had never limited the scope of Shilling Properties' authority to execute leases. Further, the magistrate concluded that Shilling Properties had reasonably believed that it possessed the implied authority to execute a long-term lease of the laundry rooms and that the management agreement, in conjunction with the conduct of the owners, did give Shilling Properties implied authority to execute a long-term lease with Sholiton. Although the magistrate did not state his conclusion in terms of "actual authority," the magistrate did, in effect, conclude that Shilling Properties had possessed actual, albeit implied, authority to enter into the lease with Sholiton. See 3 Ohio Jurisprudence 3d (1978), Agency, Section 45. He then determined, however, that equity did not require enforcement of the lease as a contract to make a lease for two reasons: Sholiton had not made a good faith effort to ascertain whether Shilling Properties had possessed authority to make the long-term lease, and Sholiton would "not be unjustly injured if the lease was not enforced as a contract" because Sholiton had already occupied the premises for most of the initial lease term.
In adopting the magistrate's decision and overruling Sholiton's objections, the trial court interpreted the magistrate's decision to have concluded that the owners "never actually authorized Shilling Properties" to enter into a long-term lease with Sholiton. As discussed supra, this is not how we interpret the magistrate's decision. Rather, we think that the magistrate did find that actual authority had been conferred, but chose not to enforce the lease in equity for other reasons.
The magistrate's finding that Shilling Properties had entered into the lease with actual authority, conferred by England, is supported by the record. England instructed Shilling Properties to find a new supplier of laundry equipment and approved the lease with Sholiton when it was presented to him. Moreover, the management agreement obviously contemplated Shilling Properties' entering into leases on the owners' behalf and did not restrict such authority in any way. Under these circumstances, there can be little doubt that England conferred actual authority upon Shilling Properties to enter into the lease with Sholiton.
The question remains, however, whether England's authorization of such a lease could have bound his cotenants, Sowers and Davis. Sowers and Davis contend that because they owned the property with England as cotenants, rather than as partners, and because Shilling Properties knew that England was not the sole owner of the property, Shilling Properties should have known that England was not permitted to authorize leases on their behalf. We disagree. While it is true that an agency relationship does not exist among cotenants absent an agreement creating such a relationship, 19 Ohio Jurisprudence 3d (1980), Cotenancy and Partition, Section 20, the evidence in this case leaves no question that England acted as an agent for Sowers and Davis in handling the management of the Highland Park Apartments. Sowers and Davis took "a hands-off approach to their ownership of Highland Park Apartments." Their inaction indicated that they had agreed that England would oversee the management of the property on their behalf. As such, Sowers and Davis were not involved in any of the management decisions related to the property, including the hiring of the management company. While an agency relationship was not inherent in the cotenancy among the owners of the Highland Park Apartments, one was created by Sowers' and Davis' deference to England in the management of the property. They cannot hide behind their cotenancy to avoid the fact that England acted on their behalf. Sowers and Davis reaped the benefits of England's agreement with Shilling Properties and the many other leases Shilling Properties had executed on the owners' behalf to which they did not object. Sowers and Davis are bound by the lease with Sholiton because England had conferred actual authority upon Shilling Properties to enter into that lease as well.
Because Shilling Properties possessed actual authority from England to enter into a lease of the laundry rooms with Sholiton, and because England acted on behalf of Sowers and Davis, Sowers and Davis were bound by the lease notwithstanding its defective execution.
Despite his conclusion that Shilling Properties had possessed actual authority to enter into the lease with Sholiton, the magistrate concluded that equity did not require enforcement of the lease as a contract to make a lease. Specifically, the magistrate concluded that Sholiton had not been diligent in ascertaining whether Shilling Properties had had written authority to execute the lease and that Sholiton had recouped its expenditures on capital improvements to the premises in the approximately ten years that it had occupied the premises under the initial lease term. In our view, however, the determination that Shilling Properties had entered into the lease with actual authority from the owners compels the conclusion that the lease was valid and enforceable. As such, inquiry by Sholiton into the matter of Shillings Properties' authority was not an essential predicate to equitable enforcement of the lease. Moreover, Sholiton bargained for a ten-year lease with a five-year option to renew. Although the magistrate found that Sholiton had recouped its capital improvements to the laundry rooms during the initial lease term, Sholiton stood to lose a substantial amount of income if it was not permitted to exercise its option to renew the lease. Thus, the trial court erred in refusing to enforce the lease.
The first assignment of error is sustained.
 II. THE TRIAL COURT ERRED BY FINDING THAT THE LEASE WAS DEFECTIVE AND UNENFORCEABLE BY FAILING TO FIND THAT PART PERFORMANCE BY THE PARTIES HAD REMOVED THE LEASE FROM THE REQUIREMENTS OF THE OHIO STATUTE OF FRAUDS AND STATUTE OF CONVEYANCES.
Having concluded, supra, that Sholiton's lease was enforceable notwithstanding its defective execution, the question of enforceability based on part performance is moot. Accordingly, pursuant to App.R. 12(A)(1)(c), we will not address this assignment of error.
 III. THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT HAD NO VALID LEASE AND THAT CONTINUED POSSESSION OF THE PREMISES BY APPELLANT SHOLITON WAS UNLAWFUL AND THAT PLAINTIFFS HAD A RIGHT TO IMMEDIATE POSSESSION AND WERE THEREFORE ENTITLED TO EJECTMENT.
The trial court ordered that Sholiton be ejected from the Highland Park Apartments. This order was based upon the court's conclusion that Sholiton's lease was invalid and unenforceable, and that Sholiton therefore was occupying the leased premises unlawfully. We have rejected this position, as discussed supra. Because Sholiton was lawfully in possession of the leased premises, ejectment was inappropriate.
The third assignment of error is sustained.
The judgment of the trial court will be reversed.
YOUNG, P.J. and GRADY, J., concur.
Copies mailed to:
Alan A. Biegel
Gregory T. Engler
Hon. Patrick J. Foley